UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COUNTY OF SANTA CLARA, *ex rel.* MIGUEL MÁRQUEZ, in his capacity as County Counsel, on behalf of the People of the State of California,<br><br>Plaintiff<br>v.<br><br>BRISTOL MYERS SQUIBB COMPANY; SANOFI-AVENTIS U.S., L.L.C.; SANOFIAVENTIS U.S., INC.; SANOFI-SYNTHELABO, INC.; and DOES 1 to 100, Inclusive,<br>Defendants. | Case No. 5:12-cv-03256-EJD<br><br>**ORDER GRANTING MOTION FOR REMAND** |

Presently before the Court is a motion filed by Plaintiff, the County of Santa Clara on behalf of the People of the State of California. Plaintiff seeks remand of this lawsuit for lack of subject matter jurisdiction. Plaintiff asserts that complete diversity is lacking, and that the Court lacks federal question jurisdiction because the Complaint does not present (or implicate) a substantial federal issue. Defendants, Bristol-Myers Squibb et al. (collectively, "Defendants") oppose the motion for remand. The parties have filed materials supporting their positions, and oral argument was heard on September 14, 2012.

Having reviewed the relevant portions of the record – including the abovementioned motions – the Court finds that it lacks subject matter jurisdiction, and grants the Plaintiff's motion for remand.

1

### I.   BACKGROUND

#### A. Factual Allegations

Plaintiff contends that Defendants engaged in a false advertising strategy with respect to the pharmaceutical drug, "Plavix." Specifically, Plaintiff asserts that Defendants' designed to replace aspirin with Plavix as a treatment for patients at risk of stroke and related ischemic events. See, Pl.'s Motion for Remand. Dkt. No. 17, at 1-2. Plaintiff contends that Defendants ignored, concealed, and minimized clinical data and other information showing that Plavix is only as effective as—or in some cases even less effective than—aspirin in treating patients Id.  Plaintiff further alleges that Defendants falsely marketed Plavix as a drug more effective than aspirin and other competitor products. Id.

Based on these allegations, Plaintiff sues exclusively under California's False Advertising Law ("FAL").  It seeks several remedies, including: (1) civil penalties, (2) injunctive relief, and (3) restitution. See, Compl. ¶ 6 (Ex. A of Defs' Opp Dkt. No. 21).

#### B. Procedural Background

On May 8, 2012, Plaintiff originally filed in the Superior Court of California for the County of Santa Clara. See, Pl.'s Motion for Remand. Dkt. No. 17, at 1-2.  On June 22, 2012, Defendants removed the lawsuit to this Court on the claimed bases of diversity and/or federal question jurisdiction. See, Defs' Opp., Dkt. No. 21.

The parties have now filed supporting and opposing motions for remand based on lack of subject matter jurisdiction. See, Pl.'s Motion for Remand. Dkt. No. 17 and Defs' Opp., Dkt. No. 21. Plaintiff has also filed a motion in reply. See, Pl.'s Motion for Reply. Dkt. No. 22. In addition, the parties provided oral argument on September 14, 2012, which the Court found helpful in disposition of the motion before it.

\
\
\
\
\

## II. ISSUES FOR DETERMINATION

The parties' contentions were centered on two major issues that can be summarized as follows:

**A.** Whether the Court possesses subject matter jurisdiction based upon the citizenship of the real parties to the controversy, and not the citizenship of nominal or formal parties?

**B.** Whether Plaintiff's (state) cause of action invokes a substantial federal question, so to trigger federal question jurisdiction?

Since the effect of removal is to deprive the state court of an action properly before it, motions arising from removal (as here) raise significant federalism concerns. See, generally, Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).[1] One of these concerns is to guard against the "heralding of a potentially enormous shift of state cases into federal courts", particularly in the context of consumer protection suits. Id. at 319, 125 S.Ct. 2363. The case at bar is one that gives rise to this very concern.

## III. DISCUSSION

An action originally filed in state court may be removed to federal court where the federal court could have exercised jurisdiction over the action in the first instance. See, 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). A district court must remand the case where the case was not properly removed. That is, if it appears before final judgment that the court lacks subject matter jurisdiction. See, 28 U.S.C. § 1447(c). The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also Gaus v. Miles, Inc., 980 F.2d 564, 566-7 (9th Cir. 1992). The Ninth Circuit has a "strong presumption against removal," whereby "federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. See, also Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996).[2]

---

[1] See generally, Akhil Reed Amar, Of Sovereignty and Federalism, 96 Yale L.J. 1425 (1987) and William A. Fletcher, A Historical Interpretation of the Eleventh Amendment: A Narrow Construction of an Affirmative Grant of Jurisdiction Rather than a Prohibition Against Jurisdiction, 35 Stan. L. Rev. 1033 (1983).

[2] The divesting of a court's subject matter jurisdiction, however, is an inquiry not "lightly" taken – particularly given the delicate federalism issues raised in removal motions. See, generally Ubl v.

**A. Whether the Court possesses subject matter jurisdiction based upon the citizenship of the real parties to the controversy, and not the citizenship of nominal or formal parties?**

To satisfy their burden to establish federal diversity jurisdiction, Defendants must satisfy two prongs. Defendants must show: (1) a dispute has arisen between citizens of different states, and (2) the sum or value in controversy exceeds $75,000. See, 28 U.S.C. § 1332(a). While the second prong is easily satisfied, the first prong provides the point of difference between the parties – i.e., diversity of citizenship.

To determine whether diversity exists, courts must examine the citizenship of the real parties to the controversy, and not the citizenship of nominal or formal parties. Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 460-61 (1980). Importantly, and for present purposes, "a State is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. Alameda County, 411 U.S. 693, 717 (1973);[3] California v. Universal Syndications, Inc., No. C 09-1186 JF (PVT), 2009 WL 1689651, at *5 (N.D. Cal. June 16, 2009) ("The State of California is not a citizen for diversity jurisdiction purposes under 28 U.S.C. § 1332.").

Defendants assert that its burden for removal is discharged for several reasons; all of which the Court rejects. First, Defendants contend that Plaintiff invoked diversity jurisdiction two years ago, in a previous case making similar allegations to this one – namely: *County of Santa Clara v. SmithKline Beecham Corp., No*. 10-00832 (N.D. Cal. Feb. 26, 2010). Defendants contend that because of this filing, Plaintiff should not be permitted to seek the opposite result in the present motion. See, Defs' Opp., Dkt. No. 21. (Ex. B). Specifically, Defendants' argue that the County of Santa Clara filed a complaint in the Northern District of California against GlaxoSmithKline concerning allegations of false promotion of the drug called, Avandia (the "Avandia action"). And since that action is similar to the instant one, Defendants' assert that Plaintiff should be precluded from seeking remand here.

---

IIF Data Solutions, 2009 WL 1254704 *1, 2009 U.S. Dist. LEXIS 38266 *7(E.D.Va. May 5, 2009). See also, United States v. Cotton, 535 U.S. 625,630 (2002).

[3] In contrast, "a political subdivision of a State, unless it is simply 'the arm or alter ego of the State,' is a citizen of the State for diversity purposes." Moor, 411 U.S. at 717.

4

Case No. 5:11-cv-03256-EJD
ORDER GRANTING MOTION TO REMAND

Defendants place much reliance on the Avandia action. It is exhaustively referenced throughout Defendants' briefing to support its overall argument against remand. However, the argument is hollow for the simple reason that a court – at all stages of proceedings – has an affirmative duty to assess its jurisdiction (irrespective of what is described in complaints of previous actions). A court must dismiss – and/or remand (as the case is here) – an action for lack of subject matter where the court has neither constitutional, nor statutory basis for a determination. See, Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). For reasons addressed below, there is no constitutional or statutory basis for the Court's jurisdiction. Moreover, the fact that the court in the Avandia action never addressed subject matter does not automatically bind this Court, and can have no jurisdictional bearing on this action. Why that case never addressed subject matter, other than reference in the complaint, is nothing but mere speculation. In the Court's view, the reference to subject matter in the complaint (without more) provides little (if any) real persuasiveness for the present motion.

Defendants' reliance on the Avandia action is also rebutted by the notion that *this* is not a case where Plaintiff has *submitted* to federal jurisdiction. Nor is it one where Plaintiff sues on a federal question, and thereby, in some way, consents to federal jurisdiction.[4] Rather, this is a case where Plaintiff (representing the state) has sued in a state court on a state law issue. Cf. California v. M & P Investments, 213 F.Supp.2d 1208 (E.D.Cal.2002).

As such, the Court rejects the argument that Plaintiff is precluded from seeking remand because of the Avandia action – particularly where there is no controlling precedent that supports Defendant's burden for removal.

Second, Defendants assert that Plaintiff is suing in two capacities – individually, as a County (with California citizenship) and on behalf of the People of the State (with no citizenship). Defendants assert that although the County has captioned the Complaint on behalf of the People of the State, its substantive allegations are not so limited and that the County may be considered a

---

[4] For example, this is not an action that was removed (or removable) as a "class action" or "mass action" under the Class Action Fairness Act ("CAFA"). See, generally Mississippi ex rel. Hood v. AU Optronics Corp., No 3:11–CV–345–CWR–FKB, 2012 WL 1575629, at *9 (S.D.Miss. May 3, 2012), discussing the nature of cases such as the present.

5
Case No. 5:11-cv-03256-EJD
ORDER GRANTING MOTION TO REMAND

citizen for the purposes of diversity on the basis that the County stands to derive actual benefit from the instant action. See, Defs' Opp., Dkt. No. 21 at 4-5.  The Court, however, is not convinced of this argument; ever more so in light of controlling precedent.

The recent case, Universal Syndications, is instructive – a case where the district attorney for Santa Cruz County brought a false advertising suit under the State's Unfair Competition Law ("UCL"). See, No. C 09-1186 JF (PVT), 2009 WL2 1689651 (June 16, 2009) at *1-2.[5] In holding in favor of the subsequent remand motion, the Court recognized that UCL's plain language authorized county district attorneys (as well as, any county counsels, or city attorneys) to bring an action "in the name of the people of the State of California."[6] Id. at *6 (quoting Cal. Bus. & Prof. Code § 17204). The Court concluded that "[t]he People are the same party as the State of California" and that, "for diversity purposes, a state is not a citizen of itself." Id.  These conclusions of law led to grant of the motion for remand for lack of jurisdiction. Id. at *5, *7.

A similar case, California v. Time Warner, is also helpful and fortifies the Plaintiff's position. There, the court held that People of the State of California were the 'real' party in interest based on language under the UCL and FAL that "a city attorney is specifically authorized to bring actions on behalf of the People of the State of California." No. CV 08-4446, 2008 WL 4291435 (C.D.Cal. Sept. 17, 2008) at *6 (citing Cal. Bus. & Prof. Code §§ 17206, 17536). Because of the specific language, the State was deemed the real party to the controversy, which defeated complete diversity jurisdiction.

Here, Plaintiff contends that the above cases are controlling for disposition of the present motion.  The Court agrees; but, it will briefly address Defendants' misplaced distinction – i.e. that Time Warner is distinguishable on the basis that Time Warner involved a State – not a County (as

---

[5] For context, Universal Syndications involved allegations that defendant falsely promoted "free coins." 2009 WL2 1689651.

[6] The People Of The State Of California v. Universal Syndications, No. C 09-1186 JF (PVT), 2009 WL2 1689651 (June 16, 2009) at *6.The Court's holding can be best summarized as follows: "In the instant action, the State of California plainly has a substantial interest in the outcome of the instant litigation. If the People prevail, the injunctive remedies they obtain will provide a benefit to all of the citizens of the state…. When these practical considerations are coupled with the unambiguous language of the statute and the consistent view of the California courts as to the nature of a UCL action, it is apparent that remand is appropriate."

6
Case No. 5:11-cv-03256-EJD
ORDER GRANTING MOTION TO REMAND

in the instant case). Specifically, the distinction is rejected because FAL's plain language authorizes the State attorney general (plus any *county counsel*) to pursue actions on *behalf* of the People of the State of California.[7] (*Emphasis Added*). Such language defeats Defendants' position, and only reinforces the congruency between the Plaintiff's Complaint and statutory basis of the false advertising claim.[8]

Because of the plain language in FAL, the County of Santa Clara is only a nominal or formal party to the proceeding. It is the conduit upon which the real party is tied to this suit – namely the State of California. Since a State is not a citizen, and the County is a mere conduit, the presence of the State of California thus destroys complete diversity required by § 1332(a). See, Navarro Savings 446 U.S. 461, 100 S.Ct. 1779, 64 L.Ed.2d 425. See, also Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694-5 (9th Cir. 2005) and Mississippi ex rel. Hood v. AU Optronics Corp., No 3:11–CV–345–CWR–FKB, 2012 WL 1575629, at *9 (S.D.Miss. May 3, 2012).

Third, Defendants argue that Plaintiff's pleadings 'disguise' the real party to the proceedings. See, Defs' Opp., Dkt. No. 21 at 4-5.[9] However, when the Court looks to the four corners of the pleadings, there is nothing that affirmatively alleges a federal claim or implicates that the County is suing individually so to trigger diversity. Nor does the claim give rise to a scenario where "a federal statute wholly displaces the state-law cause of action through complete pre-emption." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (holding complete pre-emption for certain causes of action under federal LMRA and ERISA statutes). Plaintiff's Complaint is, therefore, not an artful pleading seeking to defeat

---

[7] California v. Universal Syndications, Inc. 2009 WL 1689651, at *5 (holding that the state has a clear interest in the action "when the practical considerations" are coupled with the unambiguous language of the UCL statute.)

[8] See, Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694-5 (9th Cir. 2005).

[9] The Court observes that this argument is typically raised in the context when Plaintiff is seeking to conceal a federal issue for federal jurisdiction – not, as argued here, where Defendants' allege that Plaintiff is concealing the alleged 'real party' to the dispute for diversity purposes. See, Caterpillar Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). This, the Court thinks, further undercuts the Defendants' argument as applied in the diversity context. See also, Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1041 (9th Cir.2003) and Precision Pay Phones v. Qwest Comms. Corp., 210 F. Su pp.2d 1106, 1112-3 (N.D.Cal.2002).

1  diversity, which Defendant would have the Court believe.  Rather, it is a pleading that is consistent

2  with the four corners of the initial complaint as is required by cases such as Harris, amongst

3  others.[10]  This, coupled with the fact that Plaintiff pleads state consumer remedies pursuant to FAL

4  – which only serves to benefit the People of the State – confirms that the State is indeed the real

5  party of interest.  And since the State is not a citizen for the purposes of diversity, this makes the

6  grant of Plaintiff's motion for remand an appropriate one; ever more so when the Ninth Circuit has

7  a "strong presumption against removal" to federal courts.  See, Gaus v. Miles, Inc., 980 F.2d 564,

8  567 (9th Cir.1992).

**B. Whether Plaintiff's (state) cause of action invokes a substantial federal question, so to trigger federal question jurisdiction?**

District courts have subject matter jurisdiction over cases involving federal questions—i.e., "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under the "well-pleaded complaint rule," federal jurisdiction is present "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392. "The rule makes the plaintiff the master of the claim; and he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Here, Defendants point to recent authority that allows for federal jurisdiction (in limited circumstances) where no federal claim is pled, nor where diversity jurisdiction exists.

For instance, in 2005, the Supreme Court held that that a federal court "ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and uniformity that a federal forum offers on federal issues . . . ." See, Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). The Supreme Court's holding thus provided that a law suit is removable to a federal court if the state cause of action involves a substantial federal question. Id. at 314. That

---

[10] "[R]emovability under § 1446(b) is determined through examination of the four corners of the applicable pleadings …[T]he ground for removal must be revealed affirmatively in the initial pleading." Harris 425 F.3d 694-5. See, also, Federal Rule of Civil Procedure 17 states that actions "must be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a)(1).

question must be "actually" disputed and not disturb "any congressionally approved balance of federal and state judicial responsibilities." Id.

In holding in favor of federal jurisdiction, the Supreme Court further qualified that there is no "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims. Id.[11] (quoting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 821 (1988)). See, also, Nevada v. Bank of America Corp. 672 F.3d 661, 667-72 (9th Cir. 2012). Importantly, and for present purposes, the type of federal question jurisdiction created by Grable only applies to a "special and small category" of cases. See, Empire Healthchoice Assurance v. McVeigh, 547 U.S. 677, 699, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006); Nevada, 672 F.3d at 674. This limitation is well illustrated in Grable where the Supreme Court affirmed that the claim for quiet title under state law implicated federal tax law under 26 U.S.C. § 6335 to such an extent that it triggered federal jurisdiction. Indeed, the core of the state claim for quiet title was based on the allegation that the government did not satisfy the requisite notice provisions under 26 U.S.C. § 6335.

Here, Defendants assert that this Court can exercise federal question jurisdiction over Plaintiff's claim because it turns on a substantial question of federal law (even though the claim is asserted under California's FAL statute). The Court, however, disagrees. The reason is two-fold.

First, the Ninth Circuit's recent Nevada decision is controlling precedent on the issue of federal question jurisdiction. As Plaintiff submits, Defendants make little (if any) real reference to that decision – at least in the "federal question context." See, Pl.'s Reply Dkt. No. 22 at 4. The failure to do so by Defendants is telling.

In Nevada, the Court held that the plaintiff's claim, under Nevada's Deceptive Trade Practices Act (DTPA), did *not* raise a substantial issue of federal law. This was despite the DTPA's "borrowing" provision, making it a violation of the DTPA to "[v]iolate[ ] a state or *federal* statute relating to the sale or lease of goods or services." Nev.Rev.Stat. § 598.0923(3). Id. at 675. The Court held that a reference to the *federal* statute in the DTPA was merely a "*glancing

---

[11] Because there is no single, precise test, the Court is reticent to apply the conditions in Santa Clara v. Astra USA, Inc 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005). But the Court notes that even if the conditions were applied (which largely mirror the language in Grable), the same result held in this case would follow. See, Fn. 14, *infra*.

9
Case No. 5:11-cv-03256-EJD
ORDER GRANTING MOTION TO REMAND

reference to federal law" and "*insufficient* to confer federal jurisdiction over Nevada's state law claims." Id. at 676. (*Emphasis Added*.) See, also, Guerra v. Carrington Mortg. Servs. LLC, 2010 WL 2630278, at *2 (C.D.Cal. June 29, 2010) [12] (holding that California's UCL statute contains similar "borrowing" provisions, and that mere references to federal law in UCL claims do not convert the claim into a federal cause of action.) [13]

In light of Nevada, the Court is persuaded by the Plaintiff's position because Plaintiff makes no reference to federal law in its false advertising claim. Instead, the Complaint expressly "disclaims any cause of action or request for any remedy that arises under federal law." See, Pl.'s Reply Dkt. No. 22 (Compl. ¶ 23). Therefore, this case is even more removed from the 'glancing' federal references in the Nevada case, which only reinforces the grant of Plaintiff's motion for remand for lack of jurisdiction.[14]

Second, Defendants contend that "causation" is a "substantial element" of the Plaintiff's "FAL claim" – an element that is relevant to the restitution remedy, which allegedly implicates federal law. See, Defs' Opp., Dkt. No. 21 at 12. Defendants *loosely* assert that federal Medicaid funds come within the causation calculus (and restitution) because "the Court will necessarily be required to consider [on the merits] whether federal law would have permitted Plaintiff and other

---

[12] Cited with approval Nevada 672 F.3d 675. See also, Garduno v. Nat'l Bank of Ariz., 738 F.Supp.2d 1004, 1009 (D.Ariz.2010).

[13] As Defendants remind the Court in their Notice of Removal, the UCL and FAL are "structurally similar 'sister' statutes" that should be interpreted similarly. See, Defs' Notice of Removal. Dkt. No. 1 at 4 n.2

[14] Defendants' reliance on Santa Clara v. Astra USA, Inc 401 F. Supp. 2d 1022 does not overcome Nevada, Grable, and Caterpillar. The Astra case is distinguishable because the complaint there "explicitly involve[d] allegations" that the County was charged drug prices in excess of an applicable federal statute and a contract between the federal government and the drug manufacturers. Indeed, "[t]he contract, by its own terms," was construed in "accordance with Federal common law." 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005) (noting that "obligations to and rights of the United States under its contracts are governed exclusively by federal law"); see id. ("[Section] 1331 jurisdiction will support claims founded upon federal common law as well as those of statutory origin."). In contrast to the present case, the federal statute in Astra entangled with the state claim to such an extent to make the federal character of the claim a substantial, federal one (much like what the notice provision in the federal tax code did in Grable for the state claim for quiet title in that case). Here, however, there are no allegations with respect to federal law with respect to contracts between the federal government and drug manufacturers. The sole question is whether Defendants violated California's FAL statute with respect to false advertising about the safety and efficacy of Plavix. See, Pl.'s Motion for Remand. Dkt. No. 17 at 12-13.

government payors to refuse to reimburse for Plavix" for the alleged deception by Defendants. Id. In support of this argument, Defendants cite: In re Vioxx Prods. Liab. Litig., MDL No. 1657, 2010 WL 2649513, at *11 (E.D. La. June 29, 2010).

For several reasons, the Court finds Defendants' argument misplaced because: (1) Defendants conflate Plaintiff's pleading in its Complaint by making the FAL claim do more work than what "presented on the face of the Plaintiff's properly pleaded Complaint." See, Caterpillar, 482 U.S. at 392. It is Plaintiff who is the "master of the claim" – not the Defendant. It is the Plaintiff who may "avoid federal jurisdiction by exclusive reliance on state law", and this is precisely what is pled here. Id.; (2) Defendants' reliance on Vioxx is inapt. It is inapt because Vioxx involved a "redhibition" claim, not a claim for false and deceptive practices.[15] As such, Defendants must provide more persuasive precedent to discharge the burden for removal;[16] and, (3) Defendants fail to appreciate that restitution was claimed in Nevada, despite the same remedy pled here.[17] Defendants' require the Court to use a long lens to look downstream as to what remedies will be implicated – and then transpose what might occur later in this case to what is *now* before the Court. This is too much of a stretch. In Nevada, as addressed above, the Ninth Circuit found that no federal issues were implicated by the plaintiff's deceptive practices claim, nor did federal implication arise from the remedies sought (which included restitution).

---

[15] See, the recent unpublished slip opinion of a decision in the Western District of Louisiana in the matter captioned James D. "Buddy" Caldwell, Attorney General ex rel, State of Louisiana v. Bristol Myers-Squibb, et al., Case No. 2:12 CV00443 (Sept. 4 2012) at *6 (discussing that "Vioxx is distinguishable" from cases such as the present because it involved a claim for redhibition.) As opposed to the false advertising claim in Caldwell, a claim for redhibition requires that "the thing sold is absolutely useless for its intended purposes, or that he would not have bought it had he known of the defect." Id. Relevantly, Defendants' also note that Redhibition is quite distinct. These differences lead to a different result in the instance case.

[16] See, also Notice of Removal. Dkt No. 1 at 9, Fn 5. ("Redhibition is a civil action unique to Louisiana against a manufacturer of a defective product, whereby the buyer seeks a full or partial refund of the purchase price. La. Civ. Code arts. 2520,2541.)

[17] Restitution is, of course, an equitable remedy. The purpose for orders based in restitution is "to foreclose retention by the violator of its ill-gotten gains." Fletcher v. Sec. Pac. Nat'l Bank, 23 Cal. 3d 442, 449, 591 P.2d 51, 55 (1979). "The Legislature considered this purpose so important that it authorized the courts to order restitution without individualized proof of deception, reliance [causation], and injury if necessary to prevent the use or employment of an unfair practice." See, Bank of the W. v. Superior Ct., 2 Cal 4th 1254, 1267, 833 P.2d 545, 553 (1992).

By analogy with Nevada, it follows that no federal issues are implicated in this case when Plaintiff's claim is based on similar deceptive practices (albeit under FAL), and which also includes restitution. Put another way: as the federal borrowing provision was viewed as a 'glancing' reference with respect to the rights (and remedies) in Nevada; the Court similarly views the federal restitution implication as a 'glancing' reference in this case – a reference that is too speculative and insubstantial for the purposes of subject matter jurisdiction. Accordingly, this case aligns with Nevada, leading to a result that favors the grant of Plaintiff's motion for remand.

In sum, the type of federal question jurisdiction – created by Grable – applies only to a "special and small category" of cases. See, Empire 547 U.S. 699. It must be remembered that Grable is the exception to federal question jurisdiction; not the general rule. Stretching it beyond what it was intended to achieve will only lead down a slippery slope where all state claims will be swallowed by, or converted to, federal causes of action. Here, and unlike Grable, exercising federal question jurisdiction would have more than a "microscopic effect on the federal-state division of labor." 545 U.S. at 315. State courts "frequently handle state-law consumer protection suits" that refer to federal issues. Nevada 672 F.3d 675. Plaintiff's FAL claim is illustrative of the application of a consumer protection statute, which is grounded in state law (even with the possibility of federal Medicaid funds involved). Thus, *if* the FAL claim were to take on federal character, the federalism concerns expressed in Grable and Nevada of the "potentially enormous shift of state cases into federal courts" could become ever more real – particularly in light of FAL's consumer protection purposes. See, Grable, at 319, 125 S.Ct. 2363.[18] Given these concerns – and mindful of the federal balance and the reasoning above – [19] the Court ultimately holds in favor of remand for lack of jurisdiction.

---

[18] Mississippi ex rel., 2012 WL 1575629, at *3. (Today *parens patriae* suits are "an increasingly popular vehicle for state attorneys general to vindicate the rights of their constituents." Alexander Lemann, Sheep in Wolves' Clothing: Removing Parens Patriae Suits Under the Class Action Fairness Act, 111 Colum. L.Rev. 121, 122 (2011).

[19] The Supreme Court has consistently emphasized that – in exploring the outer reaches of § 1331 – determinations about federal jurisdiction "require sensitive judgments about congressional intent, judicial power, and the federal system." Grable at* 675-76. This motion is one of those determinations, which tilts in favor of remand.

## IV. CONCLUSION

For the reasons stated above, the Motion to Remand is GRANTED and the action is REMANDED to the Superior Court of the State of California for the County of Santa Clara for lack of subject matter jurisdiction.

The clerk of the court shall close this file.

**IT IS SO ORDERED.**

Dated:  September 17, 2012



EDWARD J. DAVILA
United States District Judge

Case No. 5:11-cv-03256-EJD
ORDER GRANTING MOTION TO REMAND